# Lane's Appeal.

A majority of the creditors of B., an insolvent, signed an agreement with him by which he was to assign all his property for the benefit of the creditors who signed the agreement. The agreement was to be void unless signed by all of his creditors. An assignment was duly made, but was not recorded within thirty days. H. and M., creditors who did not sign the agreement, and McF., who did, obtained judgments and levied on and sold the personal estate in the hands of the trustees under the assignment. There was no evidence that McF. had done anything to estop himself from claiming against the assignment. The court below awarded the fund raised by the sale to H., M. and McF. according to priority: *Held* not to be error.

June 8th 1876. Before AGNEW, C. J., MERCUR, PAXSON and WOODWARD, JJ. SHARSWOOD and WILLIAMS, JJ., absent. GORDON, J., did not sit in this case.

Appeal from the Common Pleas of *Elk county:* Of January Term 1876, No. 124. Certified from Eastern District.

This was an appeal by N. B. Lane from a decree of the Court of Common Pleas distributing the proceeds of the sale of the personal property of H. M. Brockway.

The facts as they appeared before the auditor appointed to distribute the fund in court were as follows :—

Brockway, who was the owner of a large lumber establishment in Elk county, became insolvent. A number of his creditors signed an agreement with him on November 10th 1873, that he should make an assignment to Lane and three others of his creditors for the benefit of all his creditors. The condition of this agreement as expressed therein was that all of Brockway's creditors should sign it; a large majority of the creditors, and among them one McFarlin, signed it; the latter did so with the understanding at the time of signing that the agreement should be void unless all the creditors signed it. It appeared that other creditors had signed the agreement

1 NORRIS—19

only upon that understanding. It was not signed by all the creditors of Brockway. In pursuance thereof, Brockway, on December 20th 1873, made an assignment of all his property for the benefit of those of his creditors who had signed the agreement to Lane, the appellant herein, and three other creditors ; this assignment recited the agreement of November 10th and was based upon it ; it was not recorded till January 29th 1874. The trustees therein named carried on Brockway's business, expending some of their own money and incurring personal liabilities for that purpose. In February and August 1874, Holes and Moore, two creditors of Brockway, who had not signed the agreement of November 10th, obtained judgment against him ; and in September 1874, McFarlin also obtained a judgment. Executions were issued upon all of these judgments and levied upon the personal property in the hands of the trustees. It appeared that a part of the lumber levied upon and sold had been manufactured by the trustees, after the assignment, out of logs that had belonged to Brockway.

It did not appear that McFarlin, beyond his signing the agreement of November 10th 1873, had had anything to do with the assignment or with the carrying on of the business by the trustees. An ex parte deposition tending to show that he knew that the trustees were carrying on the business and that he had worked for them, was taken more than a month after the case was argued in the court below and filed on the very day that judgment was rendered in that court. The auditor awarded the fund raised by this sale first to the payment of wages, and secondly to the payment of the above judgments according to their priority. His report was confirmed by the court below and a distribution was ordered in accordance therewith.

From this order Lane, for the trustees and creditors, appealed.

*Jenks & Clark, H. M. Powers* and *Gordon & Corbett,* for the appellant.—The assignment was on record when McFarlin obtained his judgment, and he therefore had constructive notice of it. Recording was not necessary to give validity to the assignment. It was directly to the creditors. McFarlin acquiesced in the assignment and cannot now claim against it : Guitterman *v.* Landis, 1 Weekly Notes 622; Lebanon National Bank's Appeal, Id. 627.

*Hall* and *McCauley,* for the appellees.—The assignment was within the Act of 24th March 1818, § 5; Chaffees *v.* Risk, 12 Harris 432. There was no evidence to create an estoppel against McFarlin. The deposition printed in appellant's paper-book was never before the court below : Beaupland *v.* McKeen, 4 Casey 124 ; Commonwealth *v.* Moltz, 10 Barr 533. He is not estopped by having signed the agreement of November 10th 1873, which was clearly conditional.

The judgment of the Supreme Court was entered, October 10th 1876,

PER CURIAM.—The condition in the agreement of 10th November 1873, and the trust character of the assignment for the benefit of creditors of the 20th of December 1873, made in pursuance of the agreement of the 10th of November 1873, prevented these instruments from standing in the way of execution creditors, who chose to levy and sell the property of N. M. Brockway. The property was levied and sold by the sheriff by virtue of the execution of other creditors beside James McFarlin, who had not become bound by the agreement of November 10th 1873. The sale was not disputed, so that in this proceeding the distribution to the execution of McFarlin cannot be questioned, unless he is barred by estoppel from coming in upon the fund. But there is no evidence that he either knew of or participated in the proceedings of the trustees named in the deed of assignment, or did any act to estop himself. We perceive no error in the decree, and it is therefore affirmed with costs; and the appeal dismissed.